## THE RENOVATOR.

### FENTON, Jr., v. THE RENOVATOR.

*(District Court, S. D. New York. January 29, 1887.)*

1. COLLISION—SAIL-VESSEL AND STEAMER—TACKING—OVERREACHING.

A sailing vessel has a right to rely upon the ability of a steamer to keep out of her way, and that the latter will do so, where there is nothing to prevent; nor is a sailing vessel required to take measures to avoid a steamer by remaining in stays, or overreaching longer than usual, when these measures are not apparently necessary to avoid a collision.

2. SAME—BEARING AWAY—ERROR OF JUDGMENT IN EXTREMIS.

Bearing away at the last moment to avoid instant collision is not a fault, even if a mistake, when caused by the wrongful and dangerously near approach of the steamer.

In Admiralty.

*Hyland & Zabriskie,* for libelant.

*Bergman & Dykman,* for claimant.

BROWN, J. In the afternoon of April 14, 1886, as the libelant's lighter Suffolk was beating up the East river in the last of the flood-tide, she came into collision with the Renovator, a steam propellor, coming down the East river, at a point a little above the Catharine-street ferry, some 400 feet from the Brooklyn shore. The wind was a good sailing breeze for the lighter, and nearly dead ahead. She was a small craft, only about 40 feet in length, and sailed within about 5 points of the wind. The lighter was seen by the pilot of the Renovator, which was coming down about 400 feet off the Brooklyn shore, from the time the lighter made her port tack from the New York shore. On reaching the Brooklyn shore, or near to it, she came about upon her starboard tack, and shortly after came into collision with the Renovator; her starboard bow striking the port bow of the propeller. The propellor was not embarrassed by the presence of any other vessels. It was her duty to keep out of this lighter's way, without disturbing her ordinary course in coming about. The law places the burden upon the steamer, unless she show that the collision was brought about by some fault on the lighter's part. The faults alleged are that she did not run out her port tack towards the Brooklyn shore, but came about unexpectedly; and, *second,* that she might have remained longer in stays, and, by overreaching as much as

possible, have enabled the propellor to pass ahead of her, and was therefore bound to do so,—a point about which the decisions do not agree. See *The Empire State*, 1 Ben. 57, 60; *The W. C. Redfield*, 4 Ben. 227, 234.

There is considerable diversity in the estimates of the distance from the Brooklyn shore at which the lighter tacked. Her witnesses say she ran within 50 or 100 feet of that shore, and as near as was safe. The propeller's witnesses estimate the distance from 100 to 200 feet. But there is evidence that upon the flood-tide there is an eddy for a little distance off the Brooklyn shore, which would tend to embarrass a vessel in coming about if she should run fully into it. There was also another tug with a scow coming down the river above her. The alleged fault of not running out her tack is not, I think, established; nor is the other charge of fault, in my judgment, sustained. Both the alleged faults are really sought to be applied in a way that would require the sloop to take measures to avoid the propeller, which is not required of her except where a collision is imminent. She has a right to pursue her ordinary course; and, as stated by BETTS, J., in the case of *The Argus*, Olcott, 304, 313, "she had a right to rely to the last moment upon the ability and care of the vessel before the wind;" or, in this case, of the propeller, which had the same relative duty as a sailing vessel with a free wind.

That the lighter bore away at the last moment to avoid collision was not a fault, nor even bad judgment. It evidently diminished the injury. But, even had it been a mistake it would have been a mistake *in extremis* for which the Renovator would have been responsible, as the vessel wrongfully putting the lighter in a perilous position. *The Argus, supra; The Elizabeth Jones*, 112 U. S. 514, 526, 5 Sup. Ct. Rep. 468.

Decree for the libelant, with costs, with a reference to compute the damages, if not agreed upon.